**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CARLA MERCEDEZ, *on behalf of herself,* *FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>COMPASS GROUP USA, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff CARLA MERCEDEZ ("Plaintiff"), on behalf of herself and others similarly situated, hereby files this Class and Collective Action Complaint against Defendant COMPASS GROUP USA, INC. ("Defendant" or "COMPASS"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to timeshaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including

1

overtime, due timeshaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.     Plaintiff further alleges that, pursuant to the New York City's Fair Workweek Law ("NYCFWL"), N.Y.C. Admin. Code §§ 20-1201 *et seq.,* she and those similarly situated are entitled to recover from Defendant due to the following: (i)  changing of employees' schedule with less than 24 hours-notice without providing schedule change premium pay, (ii) engaging in termination, reduction of hours, lack of reinstatement of hours, and lack of offering in scheduling/hiring to current and former employees prior to public posting, without cause or economic justification as required by N.Y.C. Admin. Code §§ 20-1241.

4.     Plaintiff further seeks an injunction requiring Defendant to notify all nonexempt employees and former employees that any Arbitration Agreement signed by those employees are invalid by virtue of its violation of the National Labor Review Act, and due to its lack of consideration.

5.     Defendant COMPASS GROUP USA, INC. is a hospitality management conglomerate that partners with businesses in the hospitality industry to manage their client's operations, including by staffing and and managing workers on behalf of their client's businesses. Defendant serves hotels, restaurants, education, and industrial sectors.

6.     As part of Defendant's portfolio of business, Defendant manages multiple fast-food restaurants in New York City, including the following seven (7) Starbucks locations:

   a.  Citi Starbucks – 388 Greenwich Street, New York, NY 10013

   b.  New York University Starbucks – 50 Washington Square SE, New York NY 10012

   c.  Pratt Institute – 200 Wiloughby Avenue Brooklyn, NY 11205

      d.  655 W 34th Street, New York, NY 10001

      e.  Nuveen Starbucks – 730 3rd Avenue 2nd Floor, New York, NY 10017

      f.  530 East 74th Street, New York, NY 10021

      g.  45 West 4th Street, New York, NY 10012.

7.      Each of the above Starbucks (which were operated, managed, and staffed by COMPASS) is a fast food establishment pursuant to N.Y.C. Admin. Code §§ 20-1201 as each is an establishment (i) whose primary purpose is serving food or drink, (ii) where patrons order or select items and pay before eating and such items may be consumed on the premises, taken out or delivered to the customer's location; (iii) that offers limited service; and (iv) that is part of a chain with 30 or more establishments (franchised or otherwise) nationally.

8.      Defendant operates, manages, and staffs other fast food establishments throughout New York City not listed above, such as the following: (i) Capital One Café, (ii) Chopt, and (iii) Chipotle (collective, all fast food establishments as defined by §§ 20-1201 and operated by Defendant, "Fast Food Establishments").

9.      Plaintiff and others similarly situated are victims of Defendant's scheme to underpay employees. Specifically, Defendant timeshaved Plaintiff and those similarly situated every week by requiring off-the-clock post shift work and improper meal breaks deductions. As a result, Defendant routinely timeshaved Plaintiff and those similarly situated on a weekly basis in violation of both the FLSA and NYLL.

10.     Defendant failed to compensate Plaintiff and others similarly situated overtime wages for all relevant weeks where Plaintiff worked over 40 hours.

11.     Defendant failed to compensate Plaintiff and others similarly situated for their earned spread of hours for workdays lasting ten hours or longer.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

13.     In addition to jurisdiction due to a federal question, this Court has jurisdiction over the matter due to diversity of citizenship of the parties as the amount in controversy exceeds $75,000 and both parties are citizens of different States.

14.     Plaintiff is and was a citizen and resident of Bronx County, New York.

15.     Defendant is a foreign business corporation duly organized under the laws of the State of Delaware with a headquarters located 2400 Yorkmont Road, Charlotte, NC 28217, and is not a citizen of New York State.

16.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## ARBITRATION

17.     Any document purporting to be an arbitration agreement produced by Defendant in this matter will be unenforceable for at least two reasons.

18.     **First**, COMPASS's requirement for its employees to sign an arbitration agreement prior to beginning employment will constitute an unlawful "side agreement."

19.     During Plaintiff's employment with Defendant, she was a union member.

20.     Plaintiff's union was designated by the National Labor Relations Act as the designated bargaining representative with exclusive authority to bargain over conditions of employment.  As an arbitration provision is among those conditions of employment covered, any individual arbitration agreement produced by Defendant will only demonstrate Defendant's unlawful attempt to side-step the union's authority pursuant to the National Labor Relations Act.

Defendant had no right to even present an arbitration agreement outside the collective bargaining context. *See Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 247 Fed. Appx. 602 (2d Cir. 2009) ("only Mendez's union had the authority to negotiate such an arbitrarion agreement and the [arbitration] provision in the letter-agreement between Starwood and Medez is an unenforceable "side agreement.").

21.    In accordance with the precedents of this circuit, any "side agreement" to arbitrate will be unenforceable.

22.    **<u>Second</u>**, no agreement to arbitrate can exist as any arbitration provision with Defendant will be missing a key contractual element with regard to formation: consideration. Here, all employment terms, including pay rate and benefits were established by Plaintiff's and similarly situated employees' collective bargaining agreements.  Moreover, as employees in fast food establishments, they were not subject to at will termination, so continued employment may not be used as a means of consideration.  The only consideration offered in the document purporting to be an arbitration agreement is the mutuality of the promise to arbitrate, which is an illusory promise.

23.    A basic tenet of contract is that there may only be the formation of an agreement if such an agreement may be enforced by either party if breached.  "Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound." *Schlegel Mfg. Co. v. Cooper's Glue Factory*, 231 N.Y. 459, 462 (1921).  "If the promisor is free to perform it or not, as he wills, a promise is wholly illusory and will not be enforced.  The promises of neither party are binding unless those of both are obligatory." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 325 (S.D.N.Y. 2014).

24.    Defendant's arbitration provision may only be enforced by Defendant.

25.     No agreement was formed because the agreement lacks consideration to Plaintiff and, therefore, Plaintiff received no benefit from the supposedly bargained for deal. The agreement lacks consideration as in the event of Defendant's breach, Plaintiff simply has no remedy. Traditionally, a party has at least one of the following three remedies to a breach: (i) compensatory damages, (ii) injunctive relief, or (iii) reimbursement for payments made by the non-breaching party to cover contractual expenses.

26.     If Plaintiff sought to arbitrate their claims against Defendant, but Defendant refused to pay filing fees and arbitration costs to the American Arbitration Associate ("AAA"), none of the above remedies would be available to Plaintiff.

27.     One, a plaintiff may traditionally seek compensatory damages for a breached agreement.  However, Defendant's refusal to pay for arbitration could not justify compensatory damages as Plaintiff would still be capable of vindicating all her rights in Federal Court.

28.     Two, a plaintiff may traditionally seek injunctive relief, forcing a defendant to comply with an agreement.  However, an Order from the Court compelling defendant to pay an arbitrator such as AAA for its arbitration services will not remedy the original failure to pay. As Plaintiff's counsel has learned from similar breaches by other defendants, pay an an arbitrator such as AAA's policy is to ban a non-paying defendant from all future use of their services.  While the Court may issue an Injunctive Order forcing a defendant to pay for the arbitrator's services, the Court may not force the arbitrator to alter its policy and provide services to a previously banned party.  See **Exhibit A**, Example Letters from AAA Banning a Non-Paying Employer.

29.     Three, a plaintiff could pay for the arbitrator's services himself, and seek reimbursement from a defendant.  This relief is once again not available to Plaintiff.  As Defendant is fully aware, Plaintiff (like most of Defendant's employees) is not a highly compensated worker

capable of paying the tens of thousands of dollars necessary to retain the AAA's services to arbitrate individual claims.

30.     The lack of remedy detailed above has been acknowledged by the appellate Courts of this State. *Asesd, LLC v. Vanguard Constr. & Dev. Co., Inc.*, 79 A.D.3d 418 (App. Div. 1st Dept.) ("[a]s the AAA's rules provide that the remedy for a party's refusal to pay its share of arbitration fees is for the [employee] to advance the [employer]'s share of the fees, that is petitioner's recourse here. **This Court cannot fashion another remedy.**") (emphasis added).

31.     The only remedy available to Plaintiff is to advance Defendant's share of the arbitration fees. As Plaintiff's employer, Defendant is aware that employees advancing all fees to the arbitrator is an impossibility for Plaintiff and similarly situated employees. *See, e.g., E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 464 (E.D.N.Y. 2006) ($6,000 to $11,000 in estimated arbitration fees was prohibitively expensive regardless of claimant's income) (cited by *Balderas v. 8 Chelsea Corp.*, 2019 U.S. Dist. LEXIS 126661, at *7 n.4 (S.D.N.Y. July 29, 2019). Plaintiff, who earned approximately $21.00 an hour, and similarly situated employees who earned similar wages, do not have the disposable income to advance the tens of thousands of dollars in AAA's arbitration fees required to maintain an action in that forum.

32.     The fact that supposed mutual arbitration agreements cannot be enforced by low-wage employees against their employer may be seen by the following cases:

> a. *Glenn Salazar v. The Bahche Inc.*, Case No. 21-cv-05257 (S.D.N.Y. 2021). In the *Bahche* matter, the plaintiffs/employees filed a case for unpaid wages against their former employer in federal court on September 21, 2021. *Id.* at Dkt. 1. On December 30, 2021, the plaintiffs dismissed the federal action in light of defendants' production of an arbitration agreement and defendants' threat to move to compel arbitration. *Id.* at Dkt 17, 19, 30. Despite demanding arbitration, once the defendants received a bill from the arbitrator, the defendants refused to pay and refused to move forward before the AAA. *Id.* at Dkt. 21, 30; *see also,* **Exhibit A** (Letters from AAA Regarding Defendants' Refusal to Pay). On March 28, 2022, the plaintiffs were forced to reopen the

federal case. *Id.* at Dkt. 21. The plaintiffs of that matter sought recovery for the costs and fees expended due to the breach of the 'mutual arbitration agreement,' but the Court deemed no such recovery was warranted. *Id.* at Dkt 48. The plaintiff had no remedy for the breach other than an invalidation of the agreement.

b.  *Juan Lopez v. Thermo Tech Mechanical, Inc., et al*, Case No. 20-cv-09113 (S.D.N.Y. 2020). Like in *Bahche,* the plaintiff/employee in the *Thermo Tech* matter filed a case against their former employer for unpaid wages in federal court. The plaintiff's case was filed on October 30, 2020. *Id.* at Dkt. 1. Upon filing of the complaint in that matter, the parties set a case management schedule, engaged in discovery, and briefed a collective class certification motion. *Id.* at Dkt. 21, 33. Immediately after briefing a collective class certification motion, the defendants produced an arbitration agreement and demanded that the plaintiff arbitrate on an individual basis. *Id.* at Dkt. 42. In accordance with that agreement, the plaintiff dismissed the case and pursued his claims in arbitration. *Id.* After approximately 10 months in arbitration, defendants received a bill for $25,000, deemed that the arbitration costs were too high, and refused to pay for arbitration. *Id.* at Dkt. 57 ¶ 20; *see also* **Exhibit A**. The plaintiff was forced to reopen the case in federal court and continue litigating in that forum. *Id.* at Dkt. 46. No remedy was available to the plaintiff for the breach of this 'mutual arbitration agreement,' and the Court refused to even issue a sanction. *Id.* at Dkt. 104.

c.  *Nancy Torres v. Met Sunnyside Inc.*, AAA Case No. 01-22-0004-7614 (AAA 2022). In the *Met Sunnyside* matter, the plaintiff/employee elected to pursue her claims in arbitration pursuant to a mutual arbitration agreement. Defendants refused to pay for the arbitration, and the matter was dismissed from the AAA's docket. *see* **Exhibit A.** No remedy for this breach was available to the plaintiff, other than to act as if the mutual arbitration agreement never existed.

33.    Bilateral agreements, which are only enforceable by one party, lack the necessary consideration to be considered a contract.

34.    As Plaintiff has no mechanism to enforce the supposedly mutual arbitration provision found in Defendant's alleged agreement, no contract was formed.

## **PARTIES**

35.    Plaintiff CARLA MERCEDEZ is a resident of Bronx County, New York.

36.    Corporate Defendant COMPASS GROUP USA, INC. is a foreign business corporation duly organized under the laws of the State of Delaware with a headquarters located at

2400 Yorkmont Road, Charlotte, NC 28217 and an address for service of process in New York located at C/O Corporation Service Company, 80 State Street, Albany, NY, 12207-2543.

37.    The Fast Food Establishments operated by COMPASS are centrally managed and operate as a single integrated enterprise, under the common control of the Defendants.

38.    Defendant manages payment to all employees at the Fast Food Establishments it operates through a single payroll department. Plaintiff's paystub lists COMPASS as her employer and provides an address and telephone to Defendant's central payroll department. *See* **Exhibit B** (Example Paystub).

39.    Defendant hires, fires, reprimands, sets pay rates, and sets schedules as to all employees at the Fast Food Establishments it operates through its single human resources department. COMPASS operates a single career page where employees submit applications to a central human resources department which hires and directs employees employment.

40.    Defendant sets policies to all employees at the Fast Food Establishments it operates through its central human resources department.

41.    Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, and thus Defendant is an employer subject to the jurisdiction of the FLSA.

42.    At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

43.    At all relevant times, the work performed by Plaintiff and Class members was directly essential to the business operated by Defendant.

44.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTION ACTION ALLEGATIONS

45.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees working for fast food establishments (as defined by N.Y.C. Admin. Code §§ 20-1201) operated by Defendant in positions which include, but are not limited to, the following: baristas, drivers, cashiers, and janitors, among others, on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

46.    At all and relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantial job requirements and pay provisions, and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to timeshaving.

47.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via email, text, and/or first-class mail to the last address/number/email known to Defendant.

## RULE 23 CLASS ALLEGATIONS

48.    Plaintiff brings claim for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees working for fast food establishments (as defined by N.Y.C. Admin. Code §§ 20-1201) operated by Defendant in positions which include, but are not limited to, the following: baristas, drivers, cashiers, and janitors, among others,

on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members").

49.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the positions held, and the rate of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names, mobile numbers, emails, and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

50.     The proposed Class is so numerous that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons are unknown, the facts on which the calculation of that number rests are presently within the sole control of Defendant, there is no doubt that there are more than forty members of the Class.

51.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief is typical of the relief and which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, in accordance to 12 N.Y.C.R.R. § 142, (ii) engaging in termination, reduction of hours, lack of reinstatement of hours, and lack of offering in scheduling/hiring to current and former employees prior to public posting, without cause or economic justification as required by N.Y.C. Admin. Code §§ 20-1241, (iii) failing to comply with scheduling and pay requirements pursuant to N.Y.C. Admin. Code §§ 20-1201, (iv) failing to provide wage and hour notices, at date of hiring, and with

wage changes in accordance with the NYLL and NYCFWL, (v) failing to provide proper wage statements per requirements of the NYLL, and (vi) improperly attempting to limit rights of Class Members guaranteed by statute and common law contract principle.

52.     Defendant's policies and practices affected all Class Members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

53.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

54.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class members are to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, however, treating the claims as a class action

would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

55.    Defendant and other employers throughout the state violate the NYLL, Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

56.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.   Whether Defendant employed Plaintiff and Class Members within the meaning of the NYLL and NYCFWL;

b.   Whether Plaintiff and Class Members are fast food establishment employees within the meaning of the NYLL and NYCFWL;

c.   What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and Class Members;

d.  At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiff and Class Members for their work;

e.  Whether Defendant properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

f.  Whether Defendant paid Plaintiff and Class Members proper wages for all hours worked, including overtime hours;

g.  Whether Defendant provided wage and hour notices to Plaintiff and Class Members, at the date of hiring and annually, per requirements of the NYLL and NYCFWL;

h.  Whether Defendant provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL and NYCFWL;

i.  Whether Defendant complied with all protections and premiums required by the NYCFWL; and

j.  Whether Defendant forced Class members to sign unconscionable arbitration agreements calculated to deprive Class members of statutory rights by misleading them regarding their rights.

## <u>STATEMENT OF FACTS</u>

**Wage and Hour Allegations:**

57.  On or around October 2021, Plaintiff was hired by Defendant to work as a barista at the Starbucks located at 45 West 4th Street, New York, NY 10012. Plaintiff's employment with Defendant was terminated in or around February 2023 without cause or economic justification.

58.  From the start of her employment until the end, Plaintiff was scheduled to work nine (9) hour workdays, five (5) days a week, for forty-five (45) hours a week.  During her

employment Defendant would change her hours of work at the last minute to reflect a different schedule than previously assigned. For example, if scheduled to work from 9:30 am to 6:30 pm, Defendant would often change her schedule, without even 24 hours' notice, to working 7:00 am to 4:30 pm, 8:00 am to 5:30 or 10:00 am to 7:30 pm. Similarly, FLSA Collective Plaintiffs and Class Members would have their schedules changed without notice.

59.    During Plaintiff's employment, Plaintiff's managers would instruct employees to clock-out at or around the end of their scheduled shift, but required employees to engage in close-out procedures before leaving. Plaintiff was required to engage in these off-the-clock close-out procedures, which took approximately 30 minutes to complete, at least twice a week. Similarly to Plaintiff, FLSA Collective Plaintiffs, and Class Members were required to clock-out at their shift's end time, but continue engaging in Defendant's close-out procedures.

60.    Though employees were required to clock-out for meal-breaks, at least once a week, Plaintiff's managers would instruct employees, who were clocked-out to assist with service. These interruptions of meal breaks were typically 5-10 minutes in duration, and managers demanded employees remain clocked-out for an entire 30-minute meal break, even when it was interrupted by work. Plaintiff, FLSA Collective Plaintiffs, and Class Members were not permitted to clock back in when their meal breaks were interrupted, because managers knew that employees were entitled to a free-and-clear lunch break, and that employees would be required to take an additional 30-minute break if employees clocked-back in during an interrupted break. Similarly to Plaintiff, FLSA Collective Plaintiffs, and Class Members were required to remain clocked-out during meal breaks interrupted by work.

61.    Plaintiff worked as a barista for a Starbucks coffee store operated by COMPASS. Plaintiff was hired directly by COMPASS, was managed by COMPASS employees, and had

15

schedules set by COMPASS management.  Despite Starbucks being a fast food establishment as defined by NYCFWL, COMPASS failed to comply with New York City laws for fast food establishments.

62.    Plaintiff, FLSA Collective Plaintiffs, and Class Members would have their schedules altered with less than 24 hours' notice without COMPASS providing any schedule change premium pay.  This occurred for each week Plaintiff, FLSA Collective Plaintiffs, and Class Members worked.

63.    Plaintiff, FLSA Collective Plaintiffs and Class members would have their hours reduced by more than 15%, week to week, without cause and without any economic justification. This occurred for each week Plaintiff, FLSA Collective Plaintiffs and Class Members worked.

64.    COMPASS terminated Plaintiff's employment, and have terminated other employees' employment, without cause or economic justification, which is a violation of the NYCFWL.  Further, Defendant has a policy and practice of failing to reinstate hours of employees, and failing to provide current and former employees (those who were terminated in the past year) first priority for any new shifts or positions being offered as required by the NYCFWL.

65.    COMPASS was aware of FLSA, NYLL, and NYCFWL rules and regulations requiring payment of all overtime hours, regular hours, protections as to scheduling for fast food workers, and protections against without cause termination or reduction of hours, but failed to comply with these laws.

**Plaintiff's and Class members' WTPA Allegations:**

66.    Defendant never provided Plaintiff and Class Members with wages notices at hiring, as required by New York Lab. Law § 195(1).

67.     Plaintiff and Class Members likewise did not receive proper wage statements from Defendant, as required under NYLL. The checks and cash payments that were disbursed to Plaintiff and Class Members did not include all hours worked, all overtime owed. Therefore, Defendant directly violated the Work Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendant knowingly and willfully operated their business with a policy of not providing wage notices and proper wage statements to Plaintiff and Class Members.

68.     In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

69.     Had Defendant provided Plaintiff and Class Members with wage statements containing a detailed breakdown of Plaintiff's regular and overtime hours and listing Plaintiff's regular and overtime rates, as required under NYLL § 195(3), it would have been self-evident that Plaintiff was being underpaid, since a proper wage statement would have shown that Plaintiff was entitled to no less than $1,050 per week for 40 hours of regular work and 20 hours of overtime

work in 2023 or $1,120 per week for 40 hours of regular work and 20 hours of overtime work in 2024.

70.    Faced with this undeniable proof of their unlawful wage practices, Defendant would have had to either (a) increase Plaintiff's wages to the legally required amount or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiff was underpaid, which would readily inculpate Defendant in court. Either possibility would have allowed Plaintiff to more effectively vindicate his rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

71.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

72.    Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

73.    Because Defendant did not produce proper wage statements containing the actual wages to which Plaintiff was entitled (and the proper deductions), Defendant could not report to the IRS and Social Security Administration, through proper W-2s, Plaintiff's proper earnings for the year, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-

2").[1]

74.    The effect of not reporting or underreporting wages on an employees' W-2 was, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

75.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v.*

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

*Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting

*Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at

*2 (S.D.N.Y. July 14, 2022)).

76.    Here, it is clear that Defendant's failure to provide Plaintiff and Class Members

with proper wage statements entailed "concrete, downstream consequences" involving monetary

injury, because the direct effect was to reduce Plaintiff and Class Members' entitlement to social

security.

77.    Courts agree that the misreporting of earnings constitutes a concrete injury

cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The
> plaintiffs in *Calderon* were former employees alleging the employer failed to
> pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the
> plaintiffs lacked standing to compel the employer to pay their FICA taxes
> because "[b]enefits do not. . . depend on whether the employer actually paid the
> taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting
> requirement because it is the reporting of income that triggers benefits, and
> losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon*
> made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs'
> entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the
> [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

78.    The case at bar is somewhat different from *Coward* inasmuch as Defendant actually

underpaid Plaintiff and other employees, rather than merely misreporting their income. But this

distinction has no bearing on the question of Article III standing, since it is still the case that "it is

the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.  Plaintiff and

Class Members lost benefits by virtue of how Defendants reported, or failed to report, their income,

which was in turn caused by the absence of legally compliant wage statements. That is why

"Plaintiff[] [has] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

79.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

80.     Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to her social security benefits as soon as Defendant sent either failed to send a W-2 to the IRS or sent a W-2 that underreported Plaintiff's true earnings. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)). In either case, this was the result of Defendant's failure to issue legally compliant wage statements.

81.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

82.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

83.     At all relevant times, Defendant was and continues to be employers engaged in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and

207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

84.     At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

85.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.

86.     At all relevant times, Defendant had a policy and practice that failed to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

87.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff and FLSA Collective Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

88.     Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendant knew or should have known such was due.

89.     Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

90.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

91.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, plus an equal amount as liquidated damages.

92.     Plaintiff and FLSA Collective Plaintiffs is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

93.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

94.     At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the NYLL §§ 2 and 651 and N.Y.C. Admin. Code §§ 20-1201 *et seq.,* including § 20-1221, § 20-1222, § 20-1231.

95.     Defendant knowingly and willfully failed to pay Plaintiff and Class Members proper regular and overtime wages, in violation of the NYLL and NYCFWL.

96.     At all relevant times, Defendant had a policy and practice that failed to pay for all wages owed, including overtime compensation, in violation of the NYLL.

97.     At all relevant times, Defendant had a policy and practice that failed to compensate employees for changing of employees schedule with less than 24 hours-notice without providing schedule change premium pay, engaged in termination, reduction of hours, lack of reinstatement of hours, and lack of offering in scheduling/hiring to current and former employees prior to public postings, without cause or economic justification as required by NYCFWL.

98.     Defendant knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL and the NYCFWL. Due to

Defendant's NYLL and NYCFWL violations, Plaintiff and Class Members are entitled to recover from Defendant unpaid minimum wages, unpaid overtime wages, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL and the NYCFWL.

**COUNT III**

**INJUNCTIVE RELIEF**

99.     Plaintiff realleges and reavers the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

100.     Any arbitration agreement produced by Defendant compelling Plaintiff, FLSA Collective Members, and Class Members to arbitrate claims must be deemed to be against the National Labor Relations Act and/or violate principles of contract formation.

101.     Given that these arbitration agreements may not be enforced, Plaintiff also seeks an order from the Court compelling Defendants to send notices to all employees and former employees who signed the arbitration agreement, informing them that (1) these arbitration agreements are invalid, (2) they may bring their claims in Court, before a jury, and on a class basis, and (3) such other relief and notification as may be required to properly advise employees of their rights.

102.     Such injunctive relief is consistent with one of the primary purposes of the FLSA, to ensure that employees are simply aware of their rights, which courts have acknowledged in a variety of contexts. *See, e.g., Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010) (noting the "inherent impropriety of a confidentiality agreement in settlement of an FLSA dispute," because "compelled silence" in the settlement of an FLSA dispute "contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify

24

employees of their FLSA rights"); *Lanzetta v. Florio's Enters.*, 763 F. Supp. 2d 615, 622-623 (S.D.N.Y. 2011) ("the failure to provide an employee the notice required by the FLSA may be a sufficient basis for tolling, … if that failure contributed to the employee's unawareness of his rights") (internal quotes and citation omitted); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 387 (E.D.N.Y. 2010) ("The failure to post such notices advising employees of the right to earn minimum wage and overtime compensation equitably tolls the statute of limitations until an employee has actual notice of his or her rights under the FLSA."); *Lopes v. Heso, Inc.*, 2017 U.S. Dist. LEXIS 178709, *19-20 (E.D.N.Y. Oct. 27, 2017) (approving the sending of a *reminder* FLSA notice because "notices are regularly authorized in order to ensure that workers do not disregard the impending deadline and increase the odds that workers will be informed of their rights.") (internal quotes and citation omitted).

103.    While the context here is different, Plaintiff's request for injunctive relief is supported by the same underlying principle: the right of potential FLSA plaintiffs to be made aware of their rights. Defendant's practice of misleading employees with unlawful documents is, in fact, far more egregious than the mere failure to post a workplace flyer listing employees' rights under the FLSA, since the purpose of the misleading provision is to affirmatively persuade employees that any claims they may have are not worth pursuing. Most employees simply assume that they are bound by whatever they sign, unaware that an agreement with their employer cannot abrogate their statutory rights and might violate bedrock contractual protections.

104.    While Plaintiff is now personally aware of her rights under the FLSA, Second Circuit have, in other contexts, affirmed that plaintiffs may seek injunctive relief on behalf of similarly situated persons. *See Belfiore v. P&G*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("an injunction in connection with a class action is designed to afford protection of future consumers

from the same fraud. It does this by permitting the plaintiff to sue on their behalf"); *Delgado v. Ocwen Loan Servicing Company, LLC*, 2014 U.S. Dist. LEXIS 135758, 2014 WL 4773991, at *42 (E.D.N.Y. Sept. 23, 2014) ("Finding that Plaintiffs have no federal standing to enjoin a deceptive practice once they become aware of the scheme would eviscerate the intent of the California legislature in creating consumer protection statutes.") (internal quotation marks and citation omitted); *Ackerman v. Coca-Cola Co*., 2013 U.S. Dist. LEXIS 184232, 2013 WL 7044866, at *56 n.23 (E.D.N.Y. July 17, 2013) ("[C]ourts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer. To hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'") (quoting *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

   a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and NYCFWL;

   b. An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

   c. An award of unpaid regular and minimum wages, due under the FLSA and the NYLL;

   d. An award of unpaid overtime wages, due under the FLSA and the NYLL;

   e. An award of unpaid premiums, due under the NYCFWL;

f.  An award of statutory penalties as a result of Defendant's failure to comply with the NYLL wage notice and wage statement requirements;

g.  An award of liquidated damages as a result of Defendant's willful failure to pay wages pursuant to the FLSA and NYLL;

h.  An award of back pay, front pay, compensatory damages, punitive damages, and all other penalties the Court deems appropriate as a result of Defendant's adverse employment actions against Plaintiff and Class Members, pursuant to the NYCFWL

i.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.  An injunction as sought in the Statement of Claims, Count III;

k.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.  Designation of the action as a class action pursuant to F.R.C.P 23;

m.  Designation of Plaintiff as Representative of the Class;

n.  Designation of Plaintiff's Counsel as Class Counsel; and

o.  Such other relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: January 31, 2025                    Respectfully submitted,

                                           **LEE LITIGATION GROUP, PLLC**

                              By:   /s/ C.K. Lee
                                    C.K. Lee, Esq. (CL 4086)
                                    148 West 24th Street, 8th Floor
                                    New York, NY 10011
                                    Tel.: (212) 465-1180
                                    Fax: (212) 465-1181
                                    *Attorneys for Plaintiff, FLSA*
                                    *Collective Plaintiffs, and the Class*